Good morning. May it please the court, Robert Clawson for Appellants, Media Breakaway, LLC, and Scott Richter. What I'd like to do, having... Yes, Your Honor. I have a question for you. The way it looked to me was that under California law, the choice of law doctrine would guide the federal court to federal law. Under federal law, collateral estoppel effect would be given to the arbitration result. And under the arbitration result, the exclusion for intentional acts would apply. And that would be the end of it. You wouldn't get any further. Why is that not the case? There's a couple of reasons why it's not the case, Your Honor. One of them is the overall collateral estoppel issue. And the conclusion that following that course would basically result in an outcome determinative difference in a case which involves application of California state law in interpreting an insurance policy. You would have a different result in federal court than you would in state court when the California Supreme Court clearly indicated that collateral estoppel does not apply under these circumstances. The second reason why that line of analysis doesn't apply is because even if you say the document can be afforded collateral estoppel effect, you still have to decide whether it's appropriate to provide collateral estoppel effect to that document. In other words, whether the arbitration necessarily addressed the identical issues which needed to be addressed in this coverage case. And it's our conclusion that that is not the case. And it's not the case for quite a few different reasons. One of which is the arbitration was, and this is for the identical reasons the California Supreme Court and its citation to Park Hosiery were concerned with the application of collateral estoppel effect to an arbitration award in a subsequent insurance action in this context. Counsel, I'm having trouble even reaching collateral estoppel. The complaint certainly has, and I've read it pretty carefully, has no allegation of negligence. And the award, the arbitrator's award clearly is based on intentional conduct and not on negligence. So QED, there's no coverage. And you've got to get the coverage before you get anywhere. So where am I going wrong? Absolutely. And let me tell you where you're going wrong on that. Where you're going wrong on that is there are a couple of problems with concluding that even if you give this collateral estoppel effect, that that arbitration award resolves all of the coverage questions about intentional acts. The complaint alleges, one, that these acts were committed by independent affiliates of Media Breakaway, not by Media Breakaway, who Media Breakaway essentially failed to control. They set up a scheme supposedly where what the affiliates did was they would then go out and spam so that they could get revenue back from Media Breakaway. I understand. It sounded more like a reckless standard than a negligence standard, if you're going to try to imply it from the complaint. But whether or not you call it reckless or whether or not you call it negligent, it is still vicarious liability. Media Breakaway is being held liable for the intentional conduct of a third party, not one of its employees, an independent affiliate. If you read the arbitration award, it's clear that even the arbitrator acknowledged that there were circumstances where Media Breakaway didn't properly supervise or gave second and third chances, and those affiliates went out and did that conduct again. Also, the complaint includes a cause of action for breach of contract. Let's go to that specific allegation. Where it allowed it, knowingly allowed it, to continue, where's the negligence in that? That's intentional. Knowingly allowed it was an allegation. Knowingly allow is not negligence. That is intentional conduct. Correct. Now, the first one, you said there was another one other than knowingly allow. What was the other one you said? Well, there's vicarious liability. Vicarious liability for what? For intentional acts. For the intentional act of the affiliates. But the knowing allowance of intentional acts, where's the negligence in that? Well, it wasn't alleged that every act that they did was knowingly intentional. It was alleged that they failed to supervise them or that they set up a situation whereby those affiliates had an incentive to go out and either violate contracts such as the Terms of Use Agreement. It did not necessarily allege that every claim which potentially arose in that subsequent arbitration would be based upon intentional conduct. The breach of contract cause of action certainly doesn't infer that. I mean, there's a claim in there for liquidated damages of $50 per email, which was sent in violation of the Terms of Use. And all that requires is that someone for whom Media Breakaway was responsible sent an email which violated the Terms of Use. Well, I have a hard time with what you're arguing as well, because when I read the underlying breach of contract claim, the allegation is that the contract has been breached essentially through false and misleading acts, through criminal activity, through impersonating others. I mean, there's nothing in there that I see that's potentially sort of an ordinary, oops, I breached the contract. I understand, Your Honor. And here's where what we need to do is go back to the basics. The basics are the complaints. I understand, but the basics are California law says that in order to establish that there was no potential for coverage all the way back at the beginning of the case, what you need to do is prove that any act which could have resulted in liability was intentional. Well, wait a second. I mean, going back to the basics, that any act that constitutes a breach of contract, breach of contract, torts 101A, is not negligence. It's contract. Negligence is a term that we use occasionally to refer to something which isn't necessarily inherently intentional. But a breach of contract claim can be either intentional or negligent. Well, it's alleged to be intentional. I mean, as I understand the basics, one looks at the actual complaint, what is being alleged, not what some other lawyer in some other world might have alleged, but what is actually being alleged in the lawsuit. And I don't see anything in the lawsuit that alleges anything other than intentional conduct or worse. Well, Your Honor, if there is an allegation that the insured breached the contract and the factual allegations which serve as the basis for that breach, which is you failed to properly supervise or prevent these affiliates from sending e-mails which violated our terms of use, then you have a basis for liability which could be either intentional or negligent. Now, we know that the carriers recognized that and agreed to defend under reservations of rights. I'm wondering if you've got a confusion between the duty to defend and the duty to cover. The duty to defend is all facts either pleaded in the third-party complaint or known to or possible to come in on an amended complaint. The duty to defend is very broad. So if negligence is alleged or might be alleged, there might be a duty to defend. But the duty to cover is based on the true facts. It's based upon the ultimate adjudication of liability. There is a binding ultimate adjudication. I think you're contending that there isn't because the arbitration doesn't give rise to any race judicata effect. But there isn't any evidence as far as I can see that the true facts are favorable to you under either interpretation. Well, no, Your Honor. You've got intentional acts and crimes. If you go back and you look at the record, what the moving parties did was they said, here's an arbitration award, and it says that everything was intentional, which, of course, we allege it doesn't. It says things were negligent, things were intentional, there was a failure to supervise. Well, I would like you to point us, if this is not interrupting my colleague's question, to the part of the award, the language in the award that says that this is negligent. Well, again, when I use the term negligent, I'm referring to something which is not necessarily inherent. The language used in the award. And keep in mind that the award doesn't address every act or every incident which was at issue in the lawsuit. It talks about two out of seven. Counsel, I'm frustrated because my colleague's asked a question, and I'd like to hear the answer also. What specific page and line of the award are you relying on to say that there are things in here lesser than intentional conduct, whatever the word we use? These words set out in the brief. Counsel, we know something about legal language. You don't have to give us first week of torts class. We're all really interested in finding out where the good part is for your side in the arbitration agreement, since you haven't shown us true facts outside the arbitration agreement that would invoke coverage. Here are some. Paragraph 20, which is on page 10 of the final word. And keep in mind, you have to hold that both insureds intended every act for which they were potentially liable, because of the severability issue, which was raised again in the briefs. Paragraph 20, Scott Richter and certain media breakaway affiliate managers at least were wrong in their analysis. Not necessarily, they intentionally violated. The unsolicited commercial email not only violated MySpace terms of use, which is a bridge contract issue, not necessarily one that was committed intentionally. Farther down in the paragraph, the misguided and mistaken view that only phishing was inappropriate contributed substantially to a culture of abuse. And then at the bottom of the paragraph, either there was no serious training effort to control unlawful spamming activity. Wait a minute, you skipped a line there. Yes. The line that says it's clear that media breakaway condoned, encouraged, knew about, and benefited from the unlawful spam attacks. In August 2006. Counsel, as I read that paragraph, what it says is that Scott Richter and his own firm knowingly encouraged tortious and criminal conduct, did it willfully, and the best excuse they have is that they made a legal analysis, acted with their eyes open on the basis of a wrong view of what the law was. That's the best I can get out of it for you. And that's not good enough because it still makes it willful and unintentional. Yes, but that, Your Honor, that is one out of seven incidents that is mentioned here. That's the first one. And if you read the beginning of the award, the arbitrator comments that in the beginning. Is there a better paragraph for you than this one in the arbitration award? All right. Paragraph 23 has language in it that we claim supports potential for unintentional conduct. Where media breakaway benefited from wrongful activity or chose to give second or third chances to an affiliate who still failed to comply. And that's, again, in context of the August 2006 reference. If you look at the, if you read this thing from front to end, and you see that the arbitrator said in the beginning, the first incident was August 2006. Bad conduct. And it got gradually better as compliance efforts increased. But he doesn't say which of these events resulted in liability in this lump sum damages award. Did he award the entire amount for the August 2006 incident? Or did he award most of the damages for that? Was the entire claim relative to this one incident that's talked about in paragraph 20, which is the focus of a great deal of work. I thought what paragraph 23 said is if it was done independently of media breakaway, I'm not awarding a nickel against a media breakaway. No, it says where media breakaway benefited from wrongful activity or chose to give second or third chances to an affiliate who still failed to comply or directed road affiliates on how to evade detection. All of which it did after August 2006. I was looking at the sentence before that where he says where affiliates jammed or spammed without knowledge of media affiliates. It is not just an equitable responsibility for that behavior at the feet of media breakaway, meaning didn't. Correct, but just because someone says, okay, you spammed once. Do you promise not to do it again? And they say we promise not to do it again, and you give them a second chance. And they go and do it again. Does that mean you intended that they do it again? Not necessarily, and that's what means you know that they're going to. No, not necessarily. If you say don't do it again, it's against our rules, you'll be fired. And the record did show that they terminated various affiliates as the case progressed because they were consistently noncompliant. Counsel, you've just about used up your time. I'll reserve what I have left for rebuttal. Okay, thank you. Thank you. Good morning. May it please the Court, Jeffrey Ward on behalf of Greenwich Insurance Company. Mr. Tone is here on behalf of Indian Harbor Insurance Company, and we will be splitting appellees' time equally. In the limited time available to me, I'd like to address three issues. One, why the final award in the underlying arbitration is the correct evidence to consider. Two, why that final award clearly shows that there's no coverage whatsoever for this claim. And three, why Greenwich is entitled to reimbursement for the defense expenses it paid prior to its receiving the final award. First issue, the final award is conclusive evidence of the grounds for the liability found against the insurers. The exclusions at issue in the Greenwich policy specifically state that their applicability is determined by the final adjudication in the claim. That final award is the final adjudication in the claim. So whether or not collateral estoppel applies, by the terms of the policy, the final award is the appropriate evidence to look at to determine whether the exclusions are triggered. Say that again. I didn't follow it. The exclusion A of the Greenwich policy says that there's no coverage for any claim brought about or contributed to, in fact, by any intentional dishonest conduct or profit to which any insured is not legally entitled, as determined by a final adjudication in the underlying action. Here, the underlying action is the claim that MySpace brought against Media Breakaway and Mr. Richter. And the final adjudication in that action is the final award that the arbitrator issued and that the federal court confirmed when it entered the judgment against the insurers. So the only evidence of whether that final adjudication was based on the excluded conduct is the final award because that's where the arbitrator said why he was holding them liable. Of course, collateral estoppel does apply. But the law of California is clear that when you're dealing with a federal court judgment, federal preclusion rules apply. It's well established that arbitration awards are given collateral estoppel treatment. There's no doubt that Media Breakaway and Mr. Richter had a full and fair opportunity to litigate this case. It was hotly contested. There was tons of discovery. There was a full evidentiary hearing. The facts are undisputed that Media – I'm sorry, MySpace alleged that Mr. Richter and Media Breakaway intentionally facilitated spamming and phishing on MySpace and that they profited from it, and the final award of the arbitrator agreed. This is where I'm moving into my second point. How do we know that the final award is a complete bar of coverage? The arbitrator very clearly indicated in his final award that he was not holding Mr. Richter and Media Breakaway liable where they didn't know about what was going on. They are not being held liable for the acts of independent contractors that took place without their knowledge. Instead, they're only being held liable where Media Breakaway and Richter knew about it, condoned it, facilitated it, intentionally turned a blind eye to it, profited from it. All of these are intentional acts excluded by the exclusion in the Greenwich policy for which insurance coverage is prohibited under California insurance law, and therefore there can be no coverage at all. Third, the district court correctly ruled that Greenwich is entitled to reimbursement for the defense expenses it paid before the final award. The Greenwich policy specifically provides that there is no duty to defend at all where exclusion A applies and that the insurers will reimburse any defense expenses that were paid before the final adjudication triggering the exclusion. Additionally, under California law, even if the policy didn't specifically provide that, by reserving rights to obtain reimbursement at the time of the payment, that preserves the insurance company's ability to get reimbursement. So in summary, Your Honor, the district court correctly granted summary judgment in favor of Greenwich, and I would ask that this court confirm. Thank you, counsel. We'll go for Mr. Tone. Good morning, Your Honors. Michael Tone on behalf of Indian Harbor Insurance Company. My inference is that Your Honor's questions memorialize the exact, precise, correct assessment of the way to analyze these coverage issues. Is there any distinction between your two situations in that the one policy speaks, uses the language contributed to by, whereas your policy uses the language arising out of? I don't believe so. I don't believe so. The rising out of is very broad. Why are they the same? Pardon me? I take it you're saying that the effect is the same, and I'd like to hear your thinking as to why. Well, I think the effect is the same. The arising out of are based upon the language and the policy of the Indian Harbor policy is very broad. And when you look at, and I know Your Honors have read this extensively, but paragraph 24 of this award, the last sentence, clearly speaks to this. It's collateral estoppel. Even if it's not, it's evidentiary and it's conclusive that the personal profits Are you answering my question, or have you moved on? No, I think they're the same, Your Honor. I apologize. I don't see the distinction. I understand that, but my question was, would you give me the benefit of your thinking as to why you do consider that language the same? Is there any case authority on the point? I'm not aware of any, Your Honor. I apologize, but I'm not. All right. Thank you. You're welcome. But I would like to turn Your Honor's attention to the last sentence, paragraph 24. Just an equitable award must recognize responsibility for damages from past conduct and the need to prevent media breakaway from profiting by its wrongful and illegal past behavior, no matter how reformed its management has become through the years of serious litigation. As Your Honors know, there is a personal profit exclusion in the Indian Harbor policy that talks about and speaks to exclusion based upon or arising out of personal profit or advantage. Moreover, under Section 533, if the conduct is inherently harmful and if the conduct is willful, it is public policy in California, as Your Honors know, that that cannot be covered. Both of those provisions, personal profiting and 533, demonstrate when looking at the complaint, the award, the personal profit exclusion, and 533, that there never was a duty to indemnify, there never was a duty to defend under the Indian Harbor policy. The Mez case, which we cite in Honors 2 under 533, clearly demonstrates that if 533 is applicable, then there is no duty to defend, there is no duty to indemnify. That case is never distinguished by them, they never really speak to that case in any meaningful way, because it clearly establishes that this is exactly the type of conduct that 533 was designed to prohibit from a carrier having to reimburse for both duty to defend and under duty to indemnify. There is no coverage whatsoever under 533. And we don't have to guess or speculate or assume what the arbitrator was thinking. He says it right here in paragraph 24. The personal profit exclusion clearly applies. He wasn't looking at that exclusion, but he clearly memorialized in this opinion that this conduct was wrongful profit. He cites Mr. Richter's testimony that he'd rather spend a million dollars in defense to save, you know, $8 million in profit or words to that effect. And as a result of that, the personal profit exclusion and 533 apply. There never was a duty to defend, there never was a duty to indemnify. And Judge Snyder's opinion very thoroughly lays out her analysis of the complaint, the arbitration award, and both of them, as your honors question suggests, are very, very clear. We don't have to guess what was alleged. We don't have to presume what the award was. The basis for the allegations is right in the complaint, and it's all intentional. It's all personal profit or advantage to which Media Breakaway and Mr. Richter, CEO, were not entitled. And we don't have to speculate what the award says. We can read the award. This is not a matter of arcane interpretation of a very difficult statute. It is a matter, and with all due respect to my opponent, it's a matter of reading the arbitration award and reading it on its face without any sort of adversarial characterization. So what you're saying is that on the contract side, he's a Holmesian bad man, the arbitrator has so held, he'd rather pay a million in damages than lose $8 million of profit by performing his contract, but the Holmesian bad man has to pay the damages. He can't get his insurance company to pay the damages. That's exactly correct, your honor. That is exactly correct. Under personal profiting and under 533 and the dishonesty exclusion as well, which we cite exclusion A. But your honor is exactly correct. And the notion that this contract is anything other than willful, Judge Snyder, in footnote 8 of her opinion, deals emphatically with that notion and rebutts it very effectively by indicating that the contract provision is for intentional, wrongful conduct. That's the allegation for the contract count. Judge Snyder deals with that with respect to footnote 8 and deals with it effectively. So just to recap, your honors, and thank you so much for your attention, that under 533, the personal profiting exclusion, the dishonesty exclusion, there never was and there cannot be any duty to indemnify, any duty to defend. The judgment for Indian Harbor should stand as should the award of approximately $35,000 with respect to defense fees that were paid. And I thank you for your attention. I think my time is up. Thank you, counsel. Thank you so much. We used a lot of your time with questions, so you may have a minute for rebuttal. Thank you, your honor. Briefly on insurance code section 533. Everybody assumes 533 applies. 533 does not apply to one party's liability for the intentional conduct of another. It's built in the statute, and there's no way to divorce those factual allegations from the arbitration complaint or the arbitration award. They're an integral part of it. The fact that Milley Breakaway was being held liable for the conduct of its affiliates. Sometimes affiliates it was trying to control but had a difficult time controlling. With respect to Indian Harbor, reference was made to the Mez case. We did address it. Just look at the index of authorities on our reply brief, and we talk about Mez and why it doesn't apply because it's a patent infringement claim. And there is case law for the proposition that patent infringement is always intentional. This was a case with a myriad of different legal theories, including breach of contract, which I go back to again and again and note that the terms of use contract was attached to the arbitration complaint, and it does not require the conduct be intentional in order for liability to be established under that terms of use agreement. While they did say in this case they acted intentionally, the potential clearly existed. Going back to the Indian Harbor policy, Indian Harbor's policy does not contain a clause that says if there's an ultimate adjudication and there's no covered damages, you have to pay us back. It's a traditional, you have a duty to defend until the duty is terminated. Thank you, counsel. The duty to defend existed throughout the case. Thank you. Thank you. We appreciate the arguments of all counsel. The case just argued is submitted.
judges: Kleinfeld, Lucero, Graber